UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPHINE KANE,<br><br>                       Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                       Defendant. | Case No. 3:10-cv-05017-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 4, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On June 9, 2006, plaintiff filed an application for SSI benefits, and on June 21, 2006, she filed another one for disability insurance benefits, alleging disability as of May 19, 2006, due to chronic obstructive pulmonary disease ("COPD"), arthritis and high blood pressure. See Tr. 10, 106, 111, 129. Both applications were denied upon initial review and on reconsideration. See Tr.

REPORT AND RECOMMENDATION - 1

10, 59, 64.  A hearing was held before an administrative law judge ("ALJ") on April 2, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 17-54.

On May 18, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 10-16.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 15, 2009, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981, § 416.1481.  On January 13, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's final decision. See (ECF #1-#3). The administrative record was filed with the Court on April 6, 2010. See (ECF #9).  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of performing her past relevant work. For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and thus recommends that the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The Properly Evaluated the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

REPORT AND RECOMMENDATION - 3

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues the ALJ erred by failing to give appropriate weight to the findings of his treating physician, Joy Ruiz-Molleston, M.D. In regard to those findings, ALJ found in relevant part:

> It is . . . notable that the claimant's treating physician . . . failed to provide specific limitations on the claimant's activities that contradict the residual functional capacity outlined in this decision. Given the claimant's allegations of totally disabling symptoms, one would expect to see similar restrictions

REPORT AND RECOMMENDATION - 4

>placed on the claimant by her treating physician. Yet a review of the record in this case reveals no restrictions recommended by Dr. Ruiz-Molleston. The lack of restrictions provided by Dr. Ruiz-Molleston in the record, as the claimant's treating physician, has been given significant weight (Ex. 33F; 37F; 38F).

Tr. 15. Plaintiff responds to the ALJ's findings here in relevant part as follows:

>. . . Dr. Ruiz-Molleston may have failed to outline specific restrictions for the Plaintiff, but the record clearly provides "Substantial Evidence" that she intended reasonable functional restrictions of the Plaintiff . . . At the very least, Dr. Ruiz-Molleston's continued medical treatment and exhaustive list of prescriptive medications to treat multiple serious conditions in the Plaintiff indicates her commitment to the Pliantiff's symptoms and medical disorders. As an example, it is reasonable to assume that in Dr. Ruiz-Molleston's diagnosis of degenerative disk disease, Rheumatoid arthritis of the spine, and COPD, indicate a level of implicit and extensive restrictions of functional capacity. Her position as a long-time treating physician of the Plaintiff and the documentary evidence should credit the Plaintiff's allegations of substantial functional limitations with great weight in this case.

(ECF #15, pp. 5-6). This argument is wholly without merit.

First, the Ninth Circuit long has recognized that "[t]he mere existence of an impairment is insufficient proof of a disability" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). In light of this recognition, the ALJ clearly was not remiss in finding plaintiff to be not disabled, let alone to have significant work-related limitations, merely on the basis that Dr. Ruiz-Molleston diagnosed her with multiple medical conditions, even of a "serious" nature. For this reason, therefore, it is not reasonable to assume Dr. Ruiz-Molleston's medical diagnoses – again even considering that she may have been plaintiff's "long-time treating physician" – indicated "a level of implicit and extensive restrictions of functional capacity." To the extent Dr. Ruiz-Molleston's diagnosis can be interpreted as imposing some type of work-related limitations, furthermore, an ALJ need not accept the opinion of a treating physician if it is "inadequately supported by clinical findings" or "by the record as a whole." Batson v, 359 F.3d at 1195; see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. Likewise, the mere fact that medications were

REPORT AND RECOMMENDATION - 5

prescribed is insufficient to establish disability or work-related limitations.

II.     The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process,"[1] the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found in relevant part as follows:

> **. . . the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit up to six hours in an eight hour workday.  The claimant has no obvious pushing, pulling, postural, manipulative, visual, or communicative limitations.  The claimant should work in relatively clean air without concentrated**

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 6

**exposure to fumes, odors, dusts, gases, and poor ventilation due to respiratory impairment.**

Tr. 13. Plaintiff argues in so finding, the ALJ failed to evaluate the effects of the combination of her impairments upon her non-exertional limitations, such as fatigue, aches, pain and depression. But plaintiff points to no objective medical evidence to support any further specific work-related limitations stemming from such effects. Nor has plaintiff specifically challenged the propriety of the ALJ's determination that she was not entirely credible concerning her subjective complaints, and thus those complaints also do not provide proper support for her argument here.

Plaintiff points to her testimony that she suffered from recurrent and debilitating migraine headaches, which resulted in numerous absences from her job in 2006, and eventually led to her loss of employment, and to the record, which she contends is replete with emergency room visits for those headaches. Plaintiff argues it would be reasonable to assume that her headaches would affect the sustainability of any employment that required a regular schedule. Again, though, the mere fact that plaintiff was seen in an emergency room, even on multiple occasions, because of a medical condition by itself is not sufficient to establish the existence of significant work-related limitations, let alone a disabling impairment. Similarly, while plaintiff also argues the ALJ erred in assessing her RFC in light of her COPD, she does not explain how the medical evidence in the record supports the existence of any additional work-related limitations.

As for plaintiff's argument that her testimony concerning her recurrent and debilitating migraine headaches supports a finding of disability, as noted above, plaintiff has failed to show specifically how the ALJ erred in finding her testimony regarding her symptoms and subjective complaints to be not fully credible. Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. As such, the Court should not "second-guess" this credibility determination, and may not reverse it even if it is based on contradictory or ambiguous evidence.

REPORT AND RECOMMENDATION - 7

Allen, 749 F.2d at 579-80.  Because plaintiff has not explained or demonstrated specifically how the ALJ erred in his credibility determination – that is, she does not show that any of the reasons the ALJ expressly set forth for finding her to be not fully credible were invalid (see Tr. 14-15) – the undersigned declines not disturb that determination, and as such will not overturn the ALJ's RFC assessment on the basis of plaintiff's testimony.

III.   The ALJ's Findings at Step Five

Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work.  See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical question posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  In order to qualify as substantial evidence, the vocational expert's testimony must be reliable in light of the medical evidence.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  The ALJ's description of the claimant's disability thus "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity.  See Tr. 51.  In response to that question, the vocational expert testified that an individual with those limitations, and who had the same age, education and work background as plaintiff, would be able to perform her past relevant work.  See Tr. 49-51.  Based on his RFC assessment and the vocational expert's testimony, the ALJ found plaintiff to be capable at step four of performing her past relevant work.  See Tr. 15-16.

REPORT AND RECOMMENDATION - 8

Plaintiff argues the ALJ failed to incorporate her chronic, severe migraine headaches into the hypothetical question he posed to the vocational expert. But, as discussed above, the ALJ did not err in rejecting plaintiff's testimony regarding the effects her headaches had on her functional capability, or in excluding any such effects from his assessment of plaintiff's RFC. Accordingly, the ALJ also did not err in declining to include them in the hypothetical question he posed to the vocational expert. For the same reasons – and because plaintiff points to no medical evidence in the record in support thereof – the ALJ was not required to adopt the vocational expert's further testimony that an individual who called in sick on a repeated basis, i.e., either weekly or three or four times a week, would be inconsistent with competitive work. See Tr. 52.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 4, 2011**, as noted in the caption.

DATED this 18th day of January, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9